Lawrence E. Henke
Vicevich Law
3738 Harrison Ave.
Butte, MT 59701
Telephone: (406) 782-1111
Fax No.: (406) 782-4000
larry@vicevichlaw.com
State Bar of Montana Nos. 42337024
  *Attorney for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA, BUTTE DIVISION

| | |
|---|---|
| JENNIFER CLAY, on behalf of herself individually, and as putative class representative for others similarly situated nationwide,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN CREDIT ACCEPTANCE, LLC, a South Carolina limited liability company.<br><br>Defendant. | Cause No.<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

COMES NOW the Plaintiff, Jennifer Clay, on behalf of herself and others similarly situated nationwide, by and through her counsel of record, Lawrence E. Henke, and for her Complaint against Defendant American Credit Acceptance, asserts and alleges as follows:

## Introduction

This is an action for violation of the federal Fair Debt Collection Practices Act against American Credit Acceptance ("ACA"), a debt collector. Ms. Clay is a consumer; she purchased a used vehicle from a car dealer, which then assigned the Retail Installment Sales Contract (including the financing obligation)(the "Agreement") to ACA. After the May 19, 2021 purchase Ms. Clay immediately experienced material mechanical problems with the vehicle and returned it to the dealer as a lemon. The dealer agreed to take the vehicle back, and sold her a replacement.

Months later, Ms. Clay received default notice from ACA stating that the original vehicle would be repossessed for non-payment. Ms. Clay then retained counsel to file suit against ACA, which was filed on November 5, 2020.

In discovery in that suit ACA admitted that there was no legal basis for a repossession. ACA directed the dealer to do a "buy back" of the vehicle, which voided the Agreement and immediately extinguished Ms. Clay's payment obligations. By settlement, ACA further admitted that Ms. Clay owed no obligation to pay ACA.

More than two years later, Ms. Clay received a deficiency notice from ACA that the "repossessed" vehicle had been sold at auction and she now was obligated to pay a deficiency balance on the Agreement. This notice stated: "Deficiency balance for which you are liable and for which "demand" is hereby made $5,798.82**" and which

included the notice: **<u>*This is an attempt to collect a debt, any information obtained will be used for that purpose.*</u>** (original in bold and underlined)

The accusation of a liability for a deficiency balance was false. It violated the FDCPA. The demand for $5,798.82 was unlawful. It violated the FDCPA.

Upon information and belief, ACA has an established pattern and practice of violating the FDCPA by, among other things, miscoding dealer buy-back transactions and sending consumers false and unlawful demand letters seeking payment of deficiency balances for which former customers have no legal obligation to pay.

Upon information and belief, ACA has unduly demanded, and received, past payments in violation of the FDCPA which should be disgorged.

# I.
# Parties

1. Plaintiff Jennifer Clay was a resident of Silver Bow County, Montana, at all times pertinent.

2. Ms. Clay is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3), and/or a person affected by a violation of the FDCPA, with standing to bring this claim under 15 U.S.C. § 1692k(a).

3. Defendant American Credit Acceptance ("ACA") has its principal place of business at 961 East Main Street, Spartanburg, SC 29302.

4. ACA self identifies as a debt collector; it also regularly collects and attempts to collect, directly or indirectly, debts alleged to be due to another, and is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6).

5. The principal purpose of ACA's conduct is the collection or attempt to collect debts, directly or indirectly, owed or due or asserted to be owed or due to another, which brings its business practices and actions under 15 U.S.C. § 1692, *et seq*.

6. ACA uses instrumentalities of interstate commerce or the mails in its business activity of debt collection.

7. ACA operates a high-volume collection business and maintains searchable electronic collection data that includes, among other things, information identifying alleged debtors and their debts, communications with the alleged debtors, including form letters sent to alleged debtors, and an accounting of money paid by alleged debtors in response to the ACA debt collection activities.

8. ACA can be served through its registered agent, C T Corporation System, 3011 American Way, Missoula, MT 59808.

## II.
## Venue and Jurisdiction

9. Jurisdiction of this Court arises under 28 U.S.C. § 1331 and pursuant to 15 U.S.C. § 1692k(d).

10. This action arises out of Defendant's violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA").

11. Venue is proper in this District because the events or omissions giving rise to this action occurred in the District of Montana, Butte Division; Plaintiff resides in the District of Montana, Butte Division; and Defendant transacts business in the District of Montana, Butte Division. 28 U.S.C. § 1391(b)(2).

## III.
## Background Facts

12. Ms. Clay is a consumer who purchased a vehicle from a dealership called Lithia Chrysler Dodge Jeep Ram Fiat of Helena in May 2019.

13. Ms. Clay signed several documents to complete the purchase of the 2010 Ford Explorer, including a Retail Installment Sales Contract.

14. On the face of the Retail Installment Sale Contract was an assignment of the contract, including the agreement to finance the vehicle, from Lithia to ACA.

15. The day after receiving the Explorer, Ms. Clay experienced a significant problem with the vehicle's transmission.

16. Lithia agree to accept return of the Explorer and to sell Ms. Clay a different vehicle to replace the Explorer.

17. Lithia's representative, Mr. Rupp promised that if Ms. Clay could get a ride to Helena that he would get her into a different vehicle and that he would send a tow truck to pick up the Explorer.

18. Lithia assured Ms. Clay that due to extensive problems with the Explorer's transmission and engine, the dealership would be "buying back the vehicle" from her and she would have no further obligation for the Explorer or the loan associated with its purchase.

19. She was advised that Lithia would pay off the loan with American Credit Acceptance in exchange for her replacement purchase from Lithia; Ms. Clay agreed to that arrangement with Lithia.

20. In spring of 2020, however, Ms. Clay received a Repossession Resumption Notice sent from ACA's headquarters in South Carolina for the returned Ford Explorer.

21. Upon information and belief, ACA had temporarily ceased all repossession efforts for all customers nationwide for a period of months, but it later resumed them en masse.

22. Upon information and belief, ACA sent the same Repossession Resumption Notice as it sent to Ms. Clay (i) nationwide, (ii) indiscriminately without factual verification of debts, and (iii) to hundreds of consumers at the same time.

23. Ms. Clay was confused by the letter because:

   a. She was unaware that ACA may have made prior repossession efforts,

   b. Repossession, before or now, was unlawful and unjustified, and

   c. She had returned the vehicle to Lithia several months prior with the affirmative representation that she would not owe ACA any money and her financing obligation was terminated.

24. Upon receipt of a demand letter from Ms. Clay's counsel, on June 12, 2020, ACA's in-house counsel sent an email stating that she agreed "with your contention that this contract should have been a buyback by Lithia."

25. ACA's counsel then stated that "we will also be coding this account in our system as a buyback. Obviously your client should disregard the Repossession Resumption Notice which she received."

26. Taking ACA's counsel at her word, Ms. Clay disregarded the Repossession Resumption Notice and went about her life with the knowledge that she did not owe any money to ACA and that she had no further obligations to ACA.

27. More than two years after resolving matters with ACA, Ms. Clay received an Explanation of Calculation of Surplus or Deficiency letter, sent by ACA from its headquarters in South Carolina.

28. That letter, dated September 6, 2022, explained that the 2010 Ford Explorer she purchased from Lithia had been sold at auction on August 10, 2022.

29. The letter further notified her that there was a "[d]eficiency balance for which you are liable and for which demand is hereby made $5,798.82."

30. The letter warned her that "**[t]his is an attempt to collect a debt, any information obtained will be used for that purpose.**" (bold and underlined in the original)

31. The letter falsely asserted a deficiency balance.

32. The letter unlawfully demanded money from Ms. Clay, with the intendent credit history harm and reported associated with a demand from a finance company.

33. The letter clearly established its business practices and actions were debt collection actions governed under 15 U.S.C. § 1692, *et seq*.

## IV.
## Class Allegations

34. <u>Class Definition</u>: Pursuant to Federal Rule of Civil Procedure 23, Plaintiff Jennifer Clay brings this case as a putative class action with a "class" defined as follows:

    All United States residents whose vehicle finance contract was bought back by the dealership after being assigned to American Credit Acceptance, and subsequent to the buyback the consumer received a letter from American Credit Acceptance demanding payment of a deficiency balance on the loan. The class will be limited to those consumers who received a deficiency letter from ACA within one year of the date this Complaint was filed.

35. <u>Numerosity</u>: The exact number of persons similarly situated to Ms. Clay is currently unknown, but is believed to be in the hundreds.

36. <u>Commonality</u>: There exist questions of law and fact common to Ms. Clay and the proposed Class, including but not limited to:

   a. Whether Defendant has a standard practice of incorrectly coding dealer buy backs in its computer system,

   b. Whether Defendant has a standard practice of sending notices to consumers that their vehicle will be subject to repossession when the vehicle has been returned to the dealer,

   c. Whether Defendant has a standard practice of sending notices to consumers that their vehicle will be repossessed when the consumer is no longer in possession of the vehicle,

   d. Whether Defendant has a standard practice of sending notices to consumers that their vehicle will be repossessed when there is no privity of contract between ACA and the consumer,

   e. Whether Defendant has a standard practice of sending unverified deficiency notices to consumers after their vehicle has been returned to the dealer under buyback arrangements,

   f. Whether Defendant has a standard practice of sending unverified deficiency notices to consumers after they are no longer in possession of the vehicle,

    g. Whether Defendant has a standard practice of sending unverified deficiency notices to consumers when there is no privity of contract between ACA and the consumer,

    h. Whether ACA violated the FDCPA by seeking payments on a deficiency balance from consumers who do not legally owe any money to ACA,

    i. Whether ACA has actually collected money from consumers based on the claimed deficiency balance ACA alleged the consumer owed, but legally did not owe,

    j. Whether ACA should be disgorged from money has collected from consumers based on a deficiency balance ACA alleged the consumer owed, but legally did not owe, and/or

    k. The nature and extent of class-wide injury and the measure of compensation for such injury.

37. <u>Typicality</u>: The claims of Ms. Clay are typical of the Class. Defendant has a practice of demanding consumers pay deficiency balances for vehicles that were subject to a dealer buyback of the financing agreement, and either ignoring the buyback obligations or falsely claiming a deficiency of a cancelled finance agreement. Plaintiff's claims, like the claims of the Class, arise out of the same

common course of conduct by ACA and are based on the same legal and remedial theories.

38. <u>Adequacy of Representation:</u> Ms. Clay is an appropriate representative party for the Class and will fairly and adequately protect the interests of the class. Plaintiff understands and is willing to undertake the responsibilities of acting in a representative capacity on behalf of the proposed Class. Plaintiff will fairly and adequately protect the interests of the Class and has no interest that directly conflict with interests of the Class. Plaintiff has retained competent and capable attorneys who are experienced trial lawyers with significant experience in complex and class action litigation, including consumer class actions. Ms. Clay and her counsel are committed to prosecuting this action vigorously on behalf of the Class and has the financial resources to do so.

39. <u>Predominance:</u> The common issues arising from Defendant's conduct predominate over any individual issues. The common issues include whether Defendant is violating federal law by demanding payment from consumers that do not owe ACA any money because the financing agreement was bought back by the dealer. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

40. <u>Superiority</u>. Plaintiff and Class members have suffered harm and damages as a result of Defendant's unlawful and wrongful conduct. Absent a class action, however, most Class members likely would find the cost of litigating their claims prohibitive. Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities. The Class members are readily identifiable from Defendants' records, and there will be no significant difficulty in the management of this case as a class action.

## V.
## Claims and Causes of Action

### COUNT 1 – VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
### 15 U.S.C. §§ 1692e, 1692e(2) and 1692f(1)

41. Plaintiff realleges and incorporates by reference all of the paragraphs of this Complaint as though fully stated herein.

42. 15 U.S.C. § 1692e states that: A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.

43. 15 U.S.C. § 1692e(2)(A) prohibits a debt collector from falsely representing "the character, amount, or legal status of any debt."

44. 15 U.S.C. § 1692f(1) prohibits a debt collector from collecting, or attempting to collect, "any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

45. As alleged above, Defendant has a standard practice of attempting to collect from consumers who do not owe money to ACA.

46. When Defendant attempts to collect a deficiency balance from Plaintiff Jennifer Clay, or any other non-debtor in the United States, it falsely represents that Ms. Clay, or any other non-debtor, owes the debt. Defendant misrepresents the character and legal status of the debt, and it collects, or attempts to collect, money that is not expressly authorized by any agreement, or permitted by law, all in violation of the FDCPA.

47. This has caused concrete harm to Ms. Clay and other class members by exposing them to adverse state court judgments, requiring them to pay legal fees to avoid entry of improper judgments against them, and upon information and belief, some class members may have paid money to ACA following receipt of a deficiency letter (lacking the legal knowledge to understand they do not owe ACA any money).

48. As a result of each of Defendant's violations of the FDCPA, Plaintiff is entitled to statutory damages in an amount up to $1,000.00 and the Class is entitled to statutory damages of up to $500,000, or 1% of Defendants' net worth, whichever is less, pursuant to 15 U.S.C. § 1692k(a)(2)(B). Plaintiff and the Class are also entitled to actual damages pursuant to 15 U.S.C. § 1692k(a)(1); to have ACA disgorged of any money it wrongfully collected; and to reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3).

## Prayer for Relief

Wherefore, Plaintiff prays for relief as follows:

A. For an award of actual damages pursuant to 15 U.S.C. § 1692k(a)(1) against Defendant and for Plaintiff and the Class;

B. For an award of statutory damages pursuant to 15 U.S.C. §1692k(a)(2)(B)(i) against the Defendant and for Plaintiff;

C. For an award of statutory damages to the Class pursuant to 15 U.S.C. §1692k(a)(2)(B)(ii) against Defendant;

D. For an award of costs of litigation and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3) against Defendant and for Plaintiff;

E. For disgorgement of any money ACA wrongfully collected, to be returned to the consumer collected from, and

F.  For any other relief the Court deems just under the circumstances.

DATED this 2nd day of November, 2022.

/s/  *Lawrence E. Henke*_____
LAWRENCE E. HENKE

## DEMAND FOR JURY TRIAL

Comes now the Plaintiff, by and through her counsel, and hereby demands a jury trial.

DATED this 2nd day of November, 2022.

/s/  *Lawrence E. Henke*_____
LAWRENCE E. HENKE
